# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **UNIVERSITY HOSPITALS HEALTH SYSTEM, INC.,** | ) ) ) ) | Case No.: |
| *Plaintiff,* | ) ) ) | Judge: |
| v. | ) ) ) ) | **COMPLAINT** |
| **FEDERAL INSURANCE COMPANY**, **A CHUBB GROUP OF INSURANCE COMPANIES MEMBER,** | ) ) ) ) ) | |
| *Defendant.* | ) ) | |

University Hospitals Health System, Inc. ("Plaintiff" or "UH"), by and through its attorneys, hereby submits the following Complaint against Federal Insurance Company (a Chubb Group of Insurance Companies Member) ("Federal" or "Defendant") alleging as follows:

## NATURE OF THE ACTION

1. This case seeks damages against Federal for breach of a settlement agreement.

2. As described in detail below, on December 20, 2019, UH and Federal settled a property damage claim for an amount in excess of $75,000.  However, more than a month after agreeing to a binding settlement, Federal reneged and refused to perform, claiming that its authorized representative for adjusting UH's property claim – who negotiated the settlement on Federal's behalf – did not have authority to enter into it.  Yet, during the time that the parties were negotiating their settlement, Federal's negotiators repeatedly stated that they would not make any offer of settlement on behalf of Federal unless and until they had full authority to make

NAI-1512778659v1

a binding settlement offer.  The facts and circumstances demonstrate that they in fact had that authority when the settlement was reached.

## PARTIES

3. UH is an Ohio non-profit corporation with its principal place of business in Cleveland, Ohio.  UH manages a network of hospitals, clinics, and physicians that provide medical services, including emergency care, women's health, cancer care, and pediatric services.

4. Federal is an insurance company incorporated in the State of Indiana, with its principal place of business in the State of New Jersey.

## JURISDICTION & VENUE

5. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(2) because all parties are citizens of different states, and the amount in controversy well exceeds $75,000, exclusive of interest and costs.

6. Defendant is subject to this Court's personal jurisdiction in that it:  (1) regularly transacts business within the State of Ohio and this judicial district; (2) contracts to supply services in the State of Ohio and in this judicial district; and (3) regularly does or solicits business and derives substantial revenue from services rendered in the State of Ohio and this judicial district.

7. Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this judicial district.  Federal entered into the settlement agreement at issue with UH while UH was in this judicial district; corresponded with UH in Cleveland, Ohio throughout the parties' relationship; and provided UH with an insurance policy in this judicial district that was the basis for UH's settlement agreement with Federal.

**FACTS**

A. **After a Temperature Spike in a Cryogenic IVF Tank, UH Submits a Claim for Property Loss under the Policy.**

8. On March 3, 2018, the temperature rose inside a cryogenic tank used to cryopreserve eggs and embryos at UH's fertility center located at 1000 Auburn Drive, Beachwood, Ohio 44122, resulting in the loss of over 4,000 eggs and embryos owned by patients of UH (the "Incident").

9. Following UH's announcement of the Incident, fertility patients asserted claims seeking compensation for the value of their lost eggs and embryos. In some cases, patients initiated litigation against UH seeking compensation for their lost property (the "IVF claims").

10. Shortly after the Incident, UH provided notice of the loss of the eggs and embryos (the "Claim") under a "Property Insurance" policy issued by Federal for the period November 1, 2017, to November 1, 2018 (the "Policy"). UH specifically sought to obtain a recovery under the Policy in order to compensate patients who lost eggs and embryos and to reimburse the cost of settling the IVF claims.

B. **Federal Initiates Settlement Negotiations with UH.**

11. UH and Federal thereafter began the process of adjusting the Claim. The teams negotiating the value of the Claim on behalf of UH and Federal stayed fairly constant throughout the entire process. The principal persons negotiating and prosecuting the Claim on UH's behalf were its Associate General Counsel, its Vice President for Corporate Risk Management Services, and its outside counsel at Calfee, Halter & Griswold LLP ("Calfee") (collectively, the "UH Negotiators"). The principal persons adjusting the Claim and negotiating on Federal's behalf were Chubb's Executive General Adjuster of Property Claims for North America and its outside counsel at Tressler LLP ("Tressler") (collectively, the "Federal Negotiators"). The UH

Negotiators and the Federal Negotiators will be collectively referred to as the "Negotiating Teams."

12. The Negotiating Teams first met face-to-face on or about February 13, 2019, at Tressler's offices in Chicago, Illinois. During that meeting, the Federal Negotiators suggested exploring an early resolution of the Claim, and UH agreed to work toward such a resolution. The Negotiating Teams then worked to identify potential obstacles to achieving an early resolution and ways to bypass those obstacles.

13. On or about May 1, 2019, the Negotiating Teams again met at Tressler's offices in Chicago. The UH Negotiators presented their Claim. Following that presentation, the Negotiating Teams discussed (1) the information that Federal needed before resolution, and (2) the impediments to achieving a resolution then recognized by the participants. The Negotiating Teams developed a "punch list" of information that Federal needed before it could determine *whether to make a settlement offer*. The Federal Negotiators proposed scheduling another meeting for mid-July 2019, at which time Federal would either make a binding settlement offer or would have isolated any remaining issues that it needed to resolve before making a concrete offer.

14. On July 16, 2019, Calfee met with the Federal Negotiators, again at Tressler's offices in Chicago. The other UH Negotiators did not attend that meeting in light of the Federal Negotiators' representation that Federal was not yet ready to make a settlement offer. During the meeting, the Negotiating Teams that were present discussed whether an early resolution remained feasible and, if it was, the next steps in that process. The Federal Negotiators identified the individuals who were reviewing the Claim and stated they had to come to a consensus before Federal could make a settlement offer. These individuals included the top four

layers of Federal's management structure ("all the way to the very top"), Federal's in-house legal team, and the "underwriting partners." The Federal Negotiators represented that there were up to 20 people that had to be involved in Federal's decision on whether to make any settlement offer at all. The participants agreed to schedule another meeting to continue exploring an early resolution.

15. On October 24, 2019, the full Negotiating Teams met again at Tressler's offices in Chicago to discuss the Claim. During that meeting, the Federal Negotiators expressed that it was Federal's desire to resolve the Claim in 2019. The Negotiating Teams also agreed to meet again in November 2019, at which time the Federal Negotiators would either: (1) make a concrete offer at the November meeting, or (2) let UH know in advance of the meeting if no settlement offer could be made, in which case the meeting would be canceled.

16. On November 11, 2019, the parties exchanged their respective expert valuation analyses for the sole purpose of negotiating a settlement, and UH made a pre-suit settlement demand.

17. The parties had originally planned to meet on November 19, 2019, at which time Federal would make a settlement offer. Because Federal was not in a position to make an offer at that time, Federal requested a postponement. The meeting was rescheduled for December 5, 2019. Federal then requested to postpone this meeting again because it still was not in a position to make a settlement offer.

18. Ultimately, UH and Federal agreed to reschedule the settlement meeting for December 16, 2019, at which time Federal had committed to have authority to make a settlement offer.

### C. The Framework Proposed by Federal at the December 16, 2019, Meeting Results in a Binding Settlement Agreement between the Parties on December 20, 2019.

19. On December 16, 2019, the complete cast of both Negotiating Teams met to discuss settlement, including Federal's authorized representative with respect to adjusting the Claim – its Executive General Adjuster for North American Property Claims.

20. The Federal Negotiators initiated the settlement negotiations by setting forth the specific framework from which they were negotiating and then made a specific monetary settlement offer.

21. As the other key part of that framework, the Federal Negotiators presented a printed term sheet for the non-monetary parts of any settlement, including provisions regarding indemnification, anti-subrogation, and confidentiality. The parties discussed the non-monetary terms *and agreed upon all of them*.

22. After lengthy negotiations, including the Federal Negotiators meeting separately and apparently speaking by phone with other higher level Federal personnel for approximately an hour, Federal ultimately made its final settlement offer. The Federal Negotiators further stated that Federal intended to pay the settlement amount in 2019. At no point on December 16, 2019, or in the days that followed, did the Federal Negotiators state that they needed to obtain additional settlement authority to make that settlement offer. The UH Negotiators did not accept Federal's final settlement offer during the December 16, 2019 meeting, but agreed to consider it.

23. On December 20, 2019, Tressler informed Calfee that its settlement offer from December 16, 2019, *remained on the table* despite some on the Federal team wanting to lower the offer. A few hours later, Calfee called Tressler and informed Tressler that UH had accepted Federal's settlement offer. Calfee offered to memorialize the settlement agreement, but Tressler

said it would memorialize the parties' settlement "within the next couple of days." Tressler also reaffirmed that Federal would pay the settlement amount in 2019.

### D. Federal Reneges and Breaches the Settlement Agreement.

24. On December 23, 2019, Calfee sent Tressler an email asking about the exact timing of Federal's payment of the settlement amount and the status of the promised draft agreement memorializing the agreed upon settlement terms. Tressler did not respond to this email. Repeated requests for status updates during December went unanswered.

25. In a January 7, 2020 email, Tressler took the position, for the first time, that the settlement was "expressly made subject to approval by our respective upper management," which was not the case. The next day, Calfee, on behalf of UH, disputed that the settlement had been made subject to any such condition and stated that the settlement was binding and enforceable. Federal and Tressler, however, assured UH and Calfee that there were no issues with getting the necessary approvals from upper management and that the dispute over the finality of the settlement would be moot.

26. On January 28, 2020, Federal stated that it was backing out of the settlement.

27. On February 7, 2020, Tressler sent Calfee a letter arguing that there was no settlement agreement, because Federal's representatives "did not have authority to consummate settlement during our in-person meeting on December 16, 2020 [sic] and in our subsequent telephone discussions on December 20, 2020 [sic]."

## COUNT I: BREACH OF CONTRACT

28. Paragraphs 1 - 27, above are incorporated by reference as if fully set forth herein.

29. As described above, all of the elements of a valid and binding contract exist: offer, acceptance, and consideration. Further, oral contracts to settle pending or potential claims

are binding and enforceable when the parties have agreed on all material terms and those terms are reasonably certain and clear.

30. UH and Federal agreed on all of the monetary and non-monetary material terms of the settlement agreement between December 16, 2019, and December 20, 2019.

31. UH performed, or stood ready to perform before Federal's breach, all conditions precedent required under the settlement agreement.

32. Federal has breached the parties' settlement agreement.

33. WHEREFORE, UH requests this Court enter judgment in its favor on Count I and award the confidential settlement amount greater than $75,000, plus costs and interest and any other remedy this Court deems proper.

## DEMAND FOR RELIEF

WHEREFORE, UH prays for judgment against Federal as follows:

a. Ordering Federal to comply with the parties' oral agreement on December 20, 2019 and pay UH the agreed-upon settlement amount; and

b. Granting such other and further relief as is just and proper.

        Respectfully submitted,

        <u>/s/ Mark J. Andreini</u>
        Mark J. Andreini
        Ohio Bar Number:  0063815
        Stephen J. Miller
        Ohio Bar Number:  0090874

        JONES DAY
        North Point
        901 Lakeside Avenue
        Cleveland, OH 44114-1190
        Phone:  216-586-3939
        Fax:  216-579-0212
        Email: mjandreini@jonesday.com
        Email: sjmiller@jonesday.com

        Counsel for University Hospitals Health
        System, Inc.